IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 3, 2023

IN RE **CHRISTABELL B.**[1] ET AL.

**Appeal from the Chancery Court for Maury County**
**No. A-011-21          Stella L. Hargrove, Judge**

_____

**No. M2021-01274-COA-R3-PT**
_____

Rebecca F. B. ("Mother") appeals the termination of her parental rights to her children Christabell B., Ashtynn B., Colton B., and Elan B. (Colton B. and Elan B. collectively, "Minor Children"; the Minor Children, Christabell B., and Ashtynn B. collectively, "Children").[2]  The Chancery Court for Maury County ("trial court") granted a default judgment against Mother and terminated her parental rights based on several statutory grounds: abandonment; persistent conditions; and failure to manifest an ability and willingness to assume legal and physical custody.  We conclude that the ground of abandonment was not proven by clear and convincing evidence, and therefore reverse the trial court's judgment as to that ground.  However, we affirm the trial court's findings as to the other statutory grounds and its finding that termination of Mother's parental rights is in the Minor Children's best interests.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part and Reversed in Part**

_____

[1] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights in order to protect their privacy and identities.

[2] At the time the petition for termination was filed, Christabell B. was seventeen, Ashtynn B. was sixteen, Colton B. was twelve, and Elan B. was just shy of eleven.  Christabell B. reached the age of majority three months before the trial court entered its order terminating parental rights.  Ashtynn B. reached the age of majority five months after the trial court entered its order terminating parental rights.  Under the circumstances, we conclude that this case is moot as to Christabell B. and Ashtynn B.  See *In re Jeffery B.*, No. W2012-00924-COA-R3-PT, 2012 WL 4854719, at *1 n.2 (Tenn. Ct. App. Oct. 12, 2012); *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *12 (Tenn. Ct. App. May 15, 2009); *see also* Tenn. Code Ann. § 36-1-102 (13), (39) (defining "child" as "any person or persons under eighteen (18) years of age[,]" and defining "parental rights" as "the legally recognized rights and responsibilities to act as a parent, to care for, to name, and to claim custodial rights with respect to a child"); *but see In re Jeremy C.*, No. M2020-00803-COA-R3-PT, 2021 WL 754604, at *6 n.5 (Tenn. Ct. App. Feb. 26, 2021) (reviewing trial court's decision to terminate mother's parental rights despite son reaching age of majority during the pendency of the appeal).

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Shawn D. Snyder, Columbia, Tennessee, for the appellant, Rebecca F. B.

Seth M. Lasater, Columbia, Tennessee, for the appellees, David J. B. and Mary B.

## OPINION

## BACKGROUND

On September 14, 2017, Mother informed David B. ("Father") that she had no food and could not take care of the Children. On that day, she dropped at least two of the Children off with Father.[3] On September 19, 2017, Father filed a petition for dependency and neglect in the Maury County Juvenile Court ("juvenile court") concerning Mother's ability to care for the Children. Father averred that the Children reported to him that Mother "was using her money to buy and smoke weed[,] was taking a lot of pills . . . there was no food in [Mother's] home[, the Children] had to fend for themselves," and Mother and Children were staying with Mother's boyfriend "from whom she bought drugs and with whom she did drugs." Mother agreed it was in the Children's best interest for them to remain in Father's care pending the adjudicatory hearing. The juvenile court granted Father sole custody and found probable cause that the Children were dependent and neglected.

On January 29, 2018, the juvenile court conducted an adjudicatory hearing and found that the Children were dependent and neglected by Mother as defined by Tennessee Code Annotated section 37-1-102(b)(13). Specifically, the juvenile court found that the Children "were certainly dependent and neglect[ed] when the Mother dropped them off at Father's residence on or about September 14, 2017[,] and the Mother has not appropriately addressed the concerns that existed at that time such that they continue to exist." These concerns include Mother's "many or more mental health diagnoses than [that c]ourt has ever seen" and Mother's "long history of marijuana use and abuse." The juvenile court left the Children in Father's custody and granted Mother unsupervised visitation for a four-hour period every Saturday and a four-hour period every Sunday in public places until she completed ten such visitations, after which she would be required to undergo a hair follicle drug screen. In the event such drug screen was positive for marijuana, Mother's visitations would cease. Finally, the order provided that "Mother shall give Father forty-eight (48)

---

[3] The findings by the juvenile court indicate that Mother dropped off two children. However, in his petition for dependency and neglect filed in the juvenile court, Father alleged that Mother "dropped off the minor children at his home, two of whom were shirtless and shoeless, and without school bags."

hours notice of whether she intends to exercise her visitation or not. If Mother fails to provide said notice for any scheduled visitation, that visitation shall be deemed canceled by the Mother."

Thirty-two months later, on August 27, 2020, Father's counsel sent a letter to Mother's counsel and the guardian ad litem advising them that he believed Mother had completed her tenth visitation and requesting that she submit to a hair follicle drug screen. Mother never submitted to the drug screen. Petitioners aver, and Mother has not disputed, that on March 24, 2021, Mother requested visitation, which was the first such request she had made since August 2020.

On March 25, 2021, Father and his wife, Mary B., (collectively, "Petitioners") filed a petition to terminate Mother's parental rights and for adoption ("petition") in the trial court. Notably, Mother never filed an answer or made any substantial efforts to defend the case.

On April 27, 2021, Petitioners filed a motion for default judgment. A hearing was held on the motion on May 7, 2021, at which Mother appeared and requested appointed counsel. The trial court denied the motion and appointed counsel for Mother and a Guardian *ad Litem* for the Children.

On September 8, 2021, Petitioners filed a motion to compel Mother to respond to discovery requests propounded upon her by Petitioners and to deem admitted Requests for Admission propounded upon Mother. Petitioners' motion was heard on October 5, 2021.[4] The trial court ordered Mother to fully answer the discovery requests within ten days from the entry of the order and cautioned Mother that a failure to respond would result in sanctions, "which may include her inability to rely on any fact or defense that may have fairly been raised in response to said discovery or entry of a default judgment against her." Additionally, the trial court deemed the Requests for Admission admitted. As a result, the following facts were conclusively established:

1. [Mother] has not provided Petitioners with a hair follicle drug screen since September 15, 2017.

2. [Petitioners] are fit and proper persons to raise [the] minor children.

3. [Mother] has not demonstrated continuity and stability in meeting the minor children's basic material, education, housing and safety needs since at least September 15, 2017.

---

[4] Petitioners and Mother agree that the hearing took place on October 5, 2021, and that the resulting order erroneously indicated September 29, 2021, which was a typographical error.

4. [Mother] and the minor children have not secured a healthy parental attachment.

5. The minor children are fearful of living in [Mother]'s home.

6. Each of the minor children has an emotionally significant relationship with Petitioner Mary [B.]

7. [Mother] has not demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the minor children to be in her home.

8. [Mother] has not taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions.

9. [Mother] has not provided safe and stable care for the minor children since at least September 15, 2017.

10. [Mother] has not demonstrated an understanding of the basic and specific needs required by each of the minor children to thrive.

11. [Mother] has not demonstrated the ability and commitment to creating and maintaining a home that meets the minor children's basic needs and in which the children can thrive.

12. [Mother] has failed to consistently provide more than token financial support for [Mother's] minor children.

13. [Mother]'s mental and emotional fitness would be detrimental to the children or prevent Mother from consistently and effectively providing safe and stable supervision for the children.

Mother failed to respond to Petitioners' discovery requests. On October 15, 2021, Petitioners filed a motion for sanctions "up to and including granting a default judgment" against Mother. The trial court heard Petitioners' motion for sanctions on October 25, 2021,[5] and found that an appropriate sanction was the entry of default judgment against Mother. The trial court noted "that, had it not granted a default judgment, [Mother] would have been precluded from presenting evidence or relying on any fact or defense that may

---

[5] The resulting order states that the hearing occurred on October 15, 2021; however, the parties' briefs indicate that the hearing actually occurred on October 25, 2021.

have fairly been raised in response to" Petitioners' discovery requests. The trial court terminated Mother's parental rights, finding that the following grounds were conclusively established and proved by clear and convincing evidence:

(1) willful failure to visit/abandonment, as defined in T.C.A. § 36-1-102(1)(A)(i) and (1)(A)(iv); (2) the conditions that led to the minor children's removal or other conditions that in all reasonable probability would cause the children to be subjected to further abuse or neglect and that, therefore prevent the children's safe return to [Mother] still persist. There is little likelihood that these conditions would be remedied at an early date so that the children can be safely returned to [Mother], and the continuation of the parent and child relationship greatly diminishes each of the children'[s] chances of continued early integration into a safe, stable and permanent home; (3) [Mother] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the minor children, placing the minor children in [Mother]'s legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the minor children; and (4) the actions and inactions of [Mother] have shown a wanton disregard for the minor children, as set forth in T.C.A. § 36-1-102(1)(A)(iv). The Court finds that the termination of [Mother]'s parental rights is in the best interest of the minor children, by clear and convincing evidence, pursuant to T.C.A. § 36-1-113(i)(1).

## ISSUES

Mother raises the following issue for our review:

1. Whether the trial court erred by entering a default judgment against Mother.

Because this is a termination of parental rights proceeding, we "must review the trial court's findings as to each ground for termination and as to whether termination is in the [Minor Children]'s best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525–26 (Tenn. 2016).

## STANDARD OF REVIEW

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley*

*v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d at 521–22. Tennessee Code Annotated section 36-1-113(g) provides the various statutory grounds for termination of parental rights. "A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)).

Considering the substantial interests at stake in termination proceedings, the heightened standard of clear and convincing evidence applies. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky*, 455 U.S. at 769). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *Id.* (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Accordingly, the standard of review in termination of parental rights cases is as follows:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights.

*In re Bernard T.*, 319 S.W.3d at 596–97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523–24.

## ANALYSIS

### I.

The trial court deemed the truth of matters contained in the Requests for Admission conclusively admitted pursuant to Rule 36.01 of the Tennessee Rules of Civil Procedure, which provides:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26.02 set forth in the request that relate to (a) facts, the application of law to fact, or opinions about either; and (b) the genuineness of any described documents. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney….

"Unanswered requests for admission are deemed admitted and the matter requested is conclusively established for the purposes of the pending case." *Tenn. Dep't of Hum. Servs. v. Barbee*, 714 S.W.2d 263, 266 (Tenn. 1986); Tenn. R. Civ. P. 36.02.

Here, Mother does not appeal the trial court's order deeming these matters admitted. Based on these admissions and Mother's failure to respond to Petitioners' discovery

requests, the trial court entered a default judgment pursuant to Tennessee Code Annotated section 36-1-117(n), which provides:

> The court may enter a default judgment against any party to the adoption or termination proceeding upon a finding that service of process has been validly made against that party in accordance with the Tennessee Rules of Civil or Juvenile Procedure and the statutes concerning substituted service; however, in termination proceedings, proof must be presented as to legal grounds and best interest pursuant to § 36-1-113.

As this court has previously explained:

> A default judgment, while a necessary part of a trial court's repertoire, is a big stick that should not be wielded haphazardly. Default judgments should be granted only when a defendant (1) makes no appearance in the case, in spite of being properly served, (2) appears, but fails to respond to the complaint, or (3) disobeys a pretrial order directing defendant to comply with some procedural requirement.

*In re Connor B.*, 603 S.W.3d 773, 782 (Tenn. Ct. App. 2020) (quoting *First Union Nat'l Bank of Tenn. v. Abercrombie*, No. M2001-01379-COA-R3-CV, 2003 WL 22251347, at *3 (Tenn. Ct. App. Oct. 2, 2003) (internal citations omitted)).

Mother was properly served with notice of the termination proceeding in this case and, although she appeared in the case, she failed to respond to the petition for termination or defend her position. Additionally, Mother did not comply with court-ordered procedural requirements, including responding to written discovery.

Recently, this Court upheld a trial court's grant of summary judgment terminating a mother's parental rights based upon admissions made by the mother in response to requests for admission and the petitioners' statement of undisputed facts filed pursuant to Rule 56.03 of the Tennessee Rules of Civil Procedure. *In re Rhyder C.*, No. E2021-01051-COA-R3-PT, 2022 WL 2837923 (Tenn. Ct. App. July 21, 2022), *no perm. app. filed.*[6] This

---

[6] Generally, a default judgment is based on the defendant's failure to plead or otherwise defend the case. See Tenn. R. Civ. P. 55.01. On the other hand, a summary judgment is granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Tenn. R. Civ. P. 56.04. We acknowledge the difference in procedural posture of this case and that in *In re Rhyder C.* Nonetheless, summary judgment in a parental termination case is based on facts deemed undisputed by a trial court, see Tenn. R. Civ. P. 56.04, just as the facts at issue in this case were deemed undisputed by the trial court. As such, despite the differing procedural postures, *In re Rhyder C.* is persuasive in this case.

Court noted that, "when the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury [or finder of fact] to resolve in favor of one party of the other." *Id.* at *9 (alteration in original) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993)). Accordingly, the trial court in that case did not err when it granted summary judgment based on the mother's admissions, just as the trial court in this case did not err simply because it granted a default judgment based upon the facts conclusively established pursuant to Rule 36 in this case, which was a valid exercise of the trial court's discretion.

With our determination that the default judgment was well within the trial court's discretion, we now examine the grounds for termination and the best interests of the children.

## II.

### A. Abandonment

The trial court found by clear and convincing evidence that Mother abandoned the Children pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i) and section 36-1-102(1)(A)(iv). Tennessee Code Annotated section 36-1-113(g)(1) includes abandonment, as defined in section 36-1-102, as a ground for terminating parental rights. At the time the petition was filed,[7] the applicable version of section 36-1-102 provided as follows:

> (1)(A) For purposes of terminating the parental . . . rights of a parent . . . of a child to that child in order to make that child available for adoption, "abandonment" means that:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent . . . either ha[s] failed to visit or ha[s] failed to support or ha[s] failed to make reasonable payments toward the support of the child[.]

Failure to visit as a ground for termination is established when a parent, "for a period of four (4) consecutive months, [fails] to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). As an affirmative defense, a parent may establish, by

---

[7] We apply the version of the statute in effect at the time the petition for termination was filed in March 2021, *see In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017), therefore we reference that version of each statute throughout this opinion.

a preponderance of the evidence, that the failure to visit was not willful. Tenn. Code Ann. § 36-1-102(1)(I). As this Court has explained,

> [f]ailure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child.

*In re Audrey S.*, 182 S.W.3d at 864 (footnote and citations omitted); *see also In re Mattie L.*, 618 S.W.3d 335, 350 (Tenn. 2021) ("Failure to visit is not willful if it is the result of coercion."); *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) ("A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control.").

The trial court found by clear and convincing evidence that Mother abandoned the Children by failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i). However, the record does not support the trial court's finding as to this ground. Petitioners aver, and Mother does not dispute, that Mother did not visit the Children in the period between August 27, 2020, and March 24, 2021; however, the trial court did not make a finding of fact as to the specific time period during which Mother failed to visit the Children, and the matters deemed admitted contain no such admission. The unproven averment in the petition does not constitute clear and convincing evidence of this failure. Consequently, we hold that Petitioners did not prove abandonment by failure to visit during the four-month period immediately preceding the filing of the petition.

Likewise, the admissions establish that Mother failed to consistently provide more than token financial support for the Children; however, the record does not contain any evidence regarding the period during which she failed to provide such support. Because the facts do not establish by clear and convincing proof that Mother failed to consistently provide more than token financial support specifically during the four-month period immediately preceding the filing of the petition, the ground of abandonment cannot be established based on the facts in the record.

The trial court also found by clear and convincing evidence that "the actions and inactions of [Mother] have shown a wanton disregard for the minor children, as set forth in T.C.A. § 36-1-102(1)(A)(iv)." However, that subsection requires clear and convincing evidence that a parent:

- 10 -

is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent . . . has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action *and* has: . . . (*c*) . . . engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (emphasis added). Again, the record does not support the trial court's finding as to this ground because there is no evidence in the record that Mother was incarcerated at the time the petition was filed or at any time during the four-month period immediately preceding the filing of the petition. Although Petitioners aver in the petition, and Mother does not dispute, that Mother was convicted of harassment and arrested for fraudulent use of a credit card at some time, this does not constitute clear and convincing proof of abandonment as defined by 36-1-102(1)(A)(iv).

We conclude that the record does not contain clear and convincing evidence that Mother abandoned the Children as defined by Tennessee Code Annotated section 36-1-102(1)(A)(i) or (iv). Therefore, we reverse the trial court's judgment as to the ground of abandonment. Nevertheless, because Petitioners successfully established alternative grounds, this ruling does not affect the trial court's ultimate termination of Mother's parental rights.

## *B. Persistent Conditions*

A parent's rights may also be terminated when:

The child has been removed from the home or the physical or legal custody of a parent . . . for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent . . ., or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent[;]

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and

(iii) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A).

As we have previously explained,

"[a] parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (citing *In re T.S. & M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. & M.S.*, 2000 WL 964775, at *6 (citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "Where . . . efforts to provide help to improve the parenting ability, offered over a long period of time, have proved ineffective, the conclusion [ ] that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.*

*In re Navada N.*, 498 S.W.3d 579, 605–06 (Tenn. Ct. App. 2016).

The record here clearly and convincingly supports the trial court's conclusion that Mother failed to remedy the persistent conditions necessitating the Children's initial removal. After Mother informed Father that she could not take care of the Children and dropped them off with Father, he initiated a dependency and neglect action as to the Children on September 19, 2017. The Children were removed from Mother's legal custody pursuant to the juvenile court's order entered October 3, 2017, approximately three and a half years before the petition to terminate Mother's rights was filed in March of 2021 and the Children were never returned to Mother's custody after that date. This well exceeds the six-month requirement of section 36-1-113(g)(3)(A). The removal was based upon, among other things, concerns about Mother's drug use, mental health issues, and an unsafe home.

The trial court found by clear and convincing evidence that

the conditions that led to the minor children's removal or other conditions that in all reasonable probability would cause the children to be subjected to further abuse or neglect and that, therefore prevent the children's safe return to [Mother] still persist. There is little likelihood that these conditions would be remedied at an early date so that the children can be safely returned to

- 12 -

[Mother], and the continuation of the parent and child relationship greatly diminishes each of the children'[s] chances of continued early integration into a safe, stable and permanent home.

As previously discussed, Mother's failure to respond to Petitioners' Requests for Admission resulted in the trial court deeming the matters set forth therein admitted, thereby conclusively establishing such matters requested as conclusive in this case. *See Tenn. Dep't of Hum. Servs. v. Barbee*, 714 S.W.2d at 266. The matters deemed admitted include the following critical admissions:

1. [Mother] has not provided Petitioners with a hair follicle drug screen since September 15, 2017.

\* \* \*

3. [Mother] has not demonstrated continuity and stability in meeting the minor children's basic material, education, housing and safety needs since at least September 15, 2017.

4. [Mother] and the minor children have not secured a healthy parental attachment.

5. The minor children are fearful of living in [Mother]'s home.

\* \* \*

7. [Mother] has not demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the minor children to be in her home.

8. [Mother] has not taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions.

9. [Mother] has not provided safe and stable care for the minor children since at least September 15, 2017.

10. [Mother] has not demonstrated an understanding of the basic and specific needs required by each of the minor children to thrive.

11. [Mother] has not demonstrated the ability and commitment to creating and maintaining a home that meets the minor children's basic needs and in which the children can thrive.

12. [Mother] has failed to consistently provide more than token financial support for [the] minor children.

13. [Mother]'s mental and emotional fitness would be detrimental to the children or prevent [Mother] from consistently and effectively providing safe and stable supervision for the children.

These admissions clearly and convincingly demonstrate that the drug use, mental health issues, and unsafe home that led to the Children's removal from Mother's legal custody still persist, preventing the Minor Children's safe return to Mother's care. Given the time that has already lapsed since the Children's removal from Mother's legal custody and the lack of progress by Mother, there is little likelihood that these conditions will be remedied so the Minor Children can be safely returned to Mother in the near future. Further, the continuation of the parent and child relationship greatly diminishes the Minor Children's chances of early integration into a safe, stable, and permanent home. Accordingly, the evidence in the record clearly and convincingly supports the trial court's conclusion that termination based upon the ground of persistent conditions was warranted, and we affirm the trial court's judgment as to that ground.

### C. Failure to Manifest an Ability and Willingness to Assume Custody

Finally, a parent's rights may be terminated when they have

failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires clear and convincing proof of two elements. *In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018). The petitioner must first prove that the parent has "failed to manifest 'an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren].'" *Id.* (alteration in original) (citing Tenn. Code Ann. § 36-1-113(g)(14)). The petitioner must then prove that placing the children in the custody of the parent poses "a risk of substantial harm to the physical or psychological welfare of the child[ren]." *Id.* (alteration in original) (quoting Tenn. Code Ann. § 36-1-113(g)(14)).

- 14 -

As to the first element, the statute requires "a parent . . . to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child." *In re Neveah M.*, 614 S.W.3d 659, 677 (Tenn. 2020). Therefore, if a party seeking termination of parental rights establishes that a parent or guardian "failed to manifest *either* ability or willingness, then the first prong of the statute is satisfied." *Id.* (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *13 (Tenn. Ct. App. June 20, 2018)).

Regarding the second element,

> [t]he courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Greyson D.*, No. E2020-00988-COA-R3-PT, 2021 WL 1292412, at *8 (Tenn. Ct. App. Apr. 7, 2021) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)) (footnotes omitted).

The trial court found clear and convincing evidence that, "[Mother] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the minor children, placing the minor children in [Mother]'s legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the minor children[.]"

As to the first element, the evidence in the record establishes, at a minimum, that Mother failed to manifest a willingness to assume custody and financial responsibility of the Children. Significantly, Mother never submitted a hair follicle drug screen as required by the juvenile court to continue having visitations with the Children, never made any effort to regain legal custody of the Children, and failed to consistently provide more than token financial support for the Children.

Regarding the second element, we affirm the juvenile court's conclusion that placing the Minor Children in Mother's custody would pose a significant risk of substantial psychological harm to the Minor Children's welfare given Mother's failure to demonstrate continuity and stability in meeting the Minor Children's basic material, education, housing, and safety needs. The record further demonstrates that Mother and the Minor Children

have not secured a healthy parental attachment, and the Minor Children are fearful of living in Mother's home.

Accordingly, the evidence in the record clearly and convincingly supports the trial court's conclusion that termination based upon the ground of failure to manifest an ability and willingness to assume custody was warranted, and we affirm the trial court's judgment as to that ground.

## III.

In addition to proving at least one statutory ground for termination, Petitioners must prove by clear and convincing evidence that the Minor Children's best interests are served by terminating Mother's parental rights. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187 (Tenn. Ct. App. 2004)). Rather, our termination statutes recognize that "[n]ot all parental misconduct is irredeemable[,]" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interests must be viewed from the child's, rather than the parent's, perspective.").

At the time Petitioners filed their petition, Tennessee Code Annotated section 36-1-113(i) provided nine factors for analyzing whether termination of parental rights is in the best interest of the Children:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

This list is non-exhaustive. *In re Marr*, 194 S.W.3d at 499. "Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent." *Id.* "The relevancy and weight to be given each factor depends on the unique facts of each case." *Id.* In some circumstances, one factor may prove dispositive. *In re Audrey S.*, 182 S.W.3d at 878. Nevertheless, we must still consider "all the factors and all the proof" before concluding termination is in the child's best interests. *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

The trial court found clear and convincing evidence that termination of the Mother's parental rights was in the best interest of the Children. After considering all the relevant factors, we agree with the trial court's determination. The record conclusively established that Mother has not demonstrated a lasting adjustment of circumstance, conduct, or conditions to make it safe and beneficial for the Minor Children to be in her home. There is no dispute that Mother has not taken advantage of available programs, services, or community resources to assist in making lasting adjustments of her circumstances, conduct, or conditions; her failure to do so has been for such a duration of time that lasting adjustment does not reasonably appear possible. Mother did not have any visitation or other contact with the Children between August 2020 and March 2021, and Mother and the Minor Children have not secured a healthy parental attachment such that the Minor Children are even fearful of living in Mother's home. In contrast, the Minor Children each have an emotionally significant relationship with Mary B.

As to factors six through nine, the Minor Children were previously found by the juvenile court to be dependent and neglected in Mother's care. The juvenile court found that Mother's use of controlled substances rendered her consistently unable to care for the Minor Children in a safe and stable manner, and there is no evidence in the record that Mother has discontinued her use of controlled substances. Further, Mother's mental and emotional fitness would be detrimental to the Minor Children or prevent Mother from consistently and effectively providing safe and stable supervision for the Minor Children. The juvenile court stated that it had not previously seen anyone with as many mental health diagnoses as Mother. Finally, it is undisputed that Mother has failed to consistently provide more than token financial support for the Minor Children.

The record clearly supports the trial court's determination that the Minor Children's best interests are served by terminating Mother's parental rights. Accordingly, we have no difficulty affirming the trial court's decision.

## CONCLUSION

The judgment of the trial court on the statutory ground of abandonment is reversed. The judgment of the trial court is in all other respects affirmed, including the trial court's ultimate termination of Mother's parental rights. Costs on appeal are assessed to the appellant, Rebecca F. B., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

- 18 -